25-774
*United States v. Larmore*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of February, two thousand twenty-six.

Present:
>   DEBRA ANN LIVINGSTON,
>       *Chief Judge*,
>   GUIDO CALABRESI,
>   ALISON J. NATHAN,
>       *Circuit Judges*.

---

UNITED STATES OF AMERICA,

    *Appellee,*

v.                                     25-774

JONATHAN MOYNAHAN LARMORE,

    *Defendant-Appellant.*

---

| | |
|---|---|
| For Appellee: | JUSTIN V. RODRIGUEZ (Adam Hobson, Sarah Mortazavi, Samuel P. Rothschild, Nathan Rehn, *on the brief*), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY. |
| For Defendant-Appellant: | RENATO MARIOTTI, Paul Hastings LLP, Chicago, IL; Bradley J. Bondi, Paul Hastings LLP, Washington, DC. |

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Jonathan Moynahan Larmore ("Larmore") appeals from a judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*), entered on March 18, 2025 and amended on March 25, 2025, convicting him, following a jury trial, of one count of tender offer fraud, in violation of 15 U.S.C. §§ 78n(e) & 78ff, 17 C.F.R. § 240.14e-8(a)–(c), and 18 U.S.C. § 2, and one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2. Larmore was sentenced principally to 60 months of imprisonment, to be followed by three years' supervised release. The evidence at trial established that, after spending more than $775,000 to acquire stock and option positions in WeWork, Inc. ("WeWork"), Larmore used a false and fraudulent tender offer to manipulate the company's stock price. On appeal, Larmore argues that the district court abused its discretion in admitting testimony and evidence from James Siegel and Jeremy Piccini, two lawyers with whom he communicated in the course of committing this crime. We affirm because Larmore has waived or forfeited his four arguments regarding this evidence, which, in any event, lack merit. We assume familiarity with the remaining facts, procedural history, and issues on appeal.

\* \* \*

We generally review evidentiary rulings for abuse of discretion. *United States v. Litvak*, 808 F.3d 160, 179 (2d Cir. 2015). But where a party has forfeited an objection by failing to raise it at trial, we review for plain error. *United States v. Gaind*, 31 F.3d 73, 76 (2d Cir. 1994). And where a party has waived an objection, we will not consider an appeal. *United States v. Batista*,

684 F.3d 333, 340 n.12 (2d Cir. 2012). A failure to object is not, without more, waiver. *United States v. Olano*, 507 U.S. 725, 733–34 (1993). But an intentional tactical decision not to object is waiver, as is declining an invitation to object. *See United States v. Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995); *see also Batista*, 684 F.3d at 340 n.12.

At the start, Larmore has waived his first argument, that the district court erred by permitting the Government to call Siegel and Piccini as witnesses.[1] On appeal, Larmore relies on a purported "presumptive exclusion of attorney testimony" to argue that Judge Engelmayer erred in permitting these witnesses to take the stand. Larmore Br. at 17. When the Government filed a letter before trial stating its intention to call Siegel and Piccini and summarizing their expected testimony, however, Larmore failed to respond. At a subsequent pretrial conference, moreover, the district court noted the lack of response to the Government's letter, and defense counsel responded with a disclaimer of any defense objection:

> THE COURT: . . . . The government filed a letter at Dkt. 72, dated September the 23rd, which reported, in relevant part, its intention to call James Siegel, Richard Silfin and Jeremy Piccini, as to whom the defense does not claim privilege and, in all events, I found a waiver with respect to any claim that could be made of privilege. I did not get a response from the defense, nor did I necessarily expect one. It's not clear that there's anything controversial about the government's proposal to call these witnesses given my ruling with respect to the nonexistence of an extant privilege. Nevertheless, just to make sure that I'm clear about this, the government's unobjected-to application, if you will, to call these people is granted.
>
> Defense, I didn't get a response. I take it there's nothing to talk about here, but I didn't want the subject to go uncommented upon.
>
> [DEFENSE COUNSEL]: We have no problem.

---

[1] In advance of trial, Larmore was the first to move *in limine* to admit certain of his communications with Siegel and Piccini, whom he had consulted (but not retained) prior to his supposed tender offer. Larmore argued that his consultations with counsel tended to show he made his tender offer in good faith, with the intent to complete the transaction. Concluding that Larmore had either not claimed or waived any pre-retention privilege claim with respect to these witnesses, the district court permitted the Government to interview the attorneys about their communications with Larmore. Based on these pretrial inquiries, the Government determined to call both attorneys at trial.

THE COURT: OK. Very good.

App'x at 213–14. In such circumstances, Larmore may not now "evade the consequences of an unsuccessful tactical decision" by challenging on appeal the witnesses' taking the stand—precisely what he declined to challenge at trial, even after the district court invited him to raise any objections he might have. *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991). And in any event, Larmore cites no precedent from this Court—there is none—for his purported presumptive exclusionary rule.

Larmore next contends that the district court abused its discretion by admitting Siegel's unobjected-to testimony that, after Larmore explained his plans, Siegel advised him, "I don't think you can do that." Larmore Br. at 18–19. Even assuming *arguendo* that Larmore did not waive this argument at trial, we discern no error, much less plain error, in admitting this testimony. Judge Engelmayer correctly determined that the testimony was "obviously properly considered by the jury as it bears on Mr. Larmore's state of mind." Trial Tr. at 3, Dkt. 38.1. On appeal, Larmore argues that "even if attorney Siegel was a 'percipient witness,'" rather than an expert witness, "he nonetheless was a practicing attorney testifying to his area of expertise, the law" and thus his "testimony was—in the eyes of the jury—functionally no different than any expert witness professing expertise in securities law." Reply Br. at 9. The district court gave an appropriate limiting instruction, however, to which Larmore assented, that jurors could consider Siegel's testimony in evaluating Larmore's state of mind during the events at issue but must take their "instructions as to the law from the Court and the Court alone." App'x at 228; Trial Tr. at 3–5; *see United States v. Ferguson*, 676 F.3d 260, 292 (2d Cir. 2011) ("[J]uries are presumed to follow their instructions." (citation omitted)). The district court did not abuse its discretion, much less plainly err, in deciding to proceed in this manner.

4

Larmore next appears to argue that the district court erred by failing *sua sponte* to declare a mistrial when Siegel further testified that the reason he advised Larmore "I don't think you can do that" was that he believed that Larmore's plan of action was "classic stock manipulation and securities fraud."[2]  App'x at 227.  We again disagree.  Larmore properly objected to this testimony at trial, and the district court immediately "direct[ed] the jury to disregard the entire last answer."  *Id.*  Shortly thereafter, the district court delivered the previously planned limiting instruction directing the jury to take its instructions on law from the Court, not any witness. Larmore did not then, or at any time subsequently, move for a mistrial.  After later excusing the jury, moreover, the district court offered defense counsel "the opportunity if there's something more you want me to say" with respect to Siegel's testimony, such as "some other instruction or action . . . needed at this point."  *Id.* at 232.  Defense counsel asked to confer, and the district court recessed for five minutes.  *Id.* at 232–34.  When the proceedings resumed, defense counsel told the district court that the defense had nothing more.  *Id.* at 234.  The district court then stated, "I think I've cured the problem," and defense counsel responded, "I think you have too, Judge."  *Id.*

In such circumstances, and again assuming *arguendo* that the point was not waived, we can discern no basis on which to conclude that the district court plainly erred by not *sua sponte* declaring a mistrial.  The district court counteracted the risk of unfair prejudice by first directing the jury to disregard the comment and by later instructing the jurors to take their "instructions as to the law from the Court and the Court alone."  *Id.* at 228.  The district court further stated in

---

[2] Larmore does not explicitly assert that the district court's error was the failure to declare a mistrial.  But that is the thrust of his argument.  *See* Larmore Br. at 20–21 (arguing that "the damage had been done" and that "[t]he district court's limiting instructions were in vain and insufficient to counter the highly prejudicial impact of the attorney testimony").

its limiting instruction that "[i]f anything that this witness or any other witness says about the law is inconsistent with this Court's instructions, you are to follow this Court's instructions." *Id.* at 228–29. Again, "juries are presumed to follow their instructions," *Ferguson*, 676 F.3d at 292 (citation omitted), and that presumption is "strong," *United States v. Graham*, 51 F.4th 67, 83 (2d Cir. 2022) (citation omitted). Larmore fails to overcome the strong presumption that the jury followed its instructions to disregard the brief and stricken testimony at issue here.[3] *See United States v. Elfgeeh*, 515 F.3d 100, 127 (2d Cir. 2008) (noting that where an inadmissible statement is followed by a curative instruction, "the court must assume that a jury will follow an instruction to disregard inadmissible evidence" absent "an overwhelming probability" to the contrary "and a strong likelihood that the effect of the evidence would be devastating to the defendant" (citation modified)). There was no error, much less plain error, in the court's determination to proceed after issuing these instructions. *See Renico v. Lett*, 559 U.S. 766, 774 (2010) (noting that the decision to grant a mistrial "is left to the sound discretion of the [trial] judge," to be exercised "with the greatest caution, under urgent circumstances, and for very plain and obvious causes" (citation modified)).

Finally, Larmore argues that Judge Englemayer abused his discretion by admitting a text message from Siegel to Larmore stating "I think you will need to have the funds locked down before the [tender offer]," along with related testimony. App'x at 225. Larmore never objected to this evidence, however, so he is again limited, at best, to plain error review. The district court did not plainly err in allowing this evidence. The court reduced any risk of unfair prejudice through its broader limiting instruction that "[i]f anything that this witness or any other witness

---

[3] Larmore argues, in addition, that the Government's legitimate argument in summation that he manipulated the stock price revived the prejudice from Siegel's stricken comment. We disagree.

says about the law is inconsistent with this Court's instructions, you are to follow this Court's instructions." *Id.* at 228–29. And particularly in light of the overwhelming evidence of Larmore's guilt, the record at trial in no way suggests the prospect of a different result if the unobjected-to text message and related testimony had not been admitted, nor of a "miscarriage of justice" because it was admitted. *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

\* \* \*

We have considered Larmore's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk